UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHARON PECKER BENYARD,                                :
                                                      :
                        Plaintiff,                    :        12-cv-1810 (NSR)
        -against-                                     :
                                                      :        OPINION AND ORDER
WHITE PLAINS HOSPITAL MEDICAL CENTER :
and ELIZABETH ZIMMERMANN,                             :
                        Defendants.                   :
----------------------------------------------------------------X
NELSON S. ROMÁN, United States District Judge

       Plaintiff Sharon Pecker Benyard, a registered nurse, commenced the instant action

against her former employer, White Plains Hospital Medical Center ("Hospital"), and former

supervisor, Elizabeth Zimmermann ("Zimmermann") (collectively, "Defendants"), seeking

monetary damages for wrongful termination.  In her complaint, Plaintiff alleges that Defendants

discriminated against her based on her age in violation of the Age Discrimination in Employment

Act ("ADEA"), 29 U.S.C. §§ 621–634 (Hospital only), and the New York State Human Rights

Law, N.Y. Exec. L. §§ 290–301, and that Defendants retaliated against her after she asserted she

would bring legal action against Zimmermann for mistreatment, in violation of the ADEA and

the Human Rights Law.

       Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary

judgment, asserting there is no genuine dispute of material fact and Defendants are entitled to

judgment on Plaintiff's discrimination and retaliation claims as a matter of law.[1]  Defendants

aver, *inter alia*, that Plaintiff cannot make out a prima facie case of discrimination or retaliation

and that Plaintiff cannot show Defendants' stated reasons for their actions are pretextual.  For the

---

[1] Contrary to Plaintiff's assertion, Defendants properly and timely served their motion papers in accordance with
Judge Karas's order of June 10, 2013, (Doc. 16), and the Court's individual rules of practice, (Rule 3.C.).

following reasons, Defendants' motion for summary judgment is granted.

## I. THE FACTS

The facts are gleaned from the parties' 56.1 statements,[2] affidavits, and exhibits

submitted with this motion,[3] and are not in dispute except where noted.

Plaintiff began her employment with the Hospital in 1986.  At all relevant times, she

worked in the maternity ward of the Hospital, known as the Mother-Baby Unit.  Plaintiff's

performance reviews were excellent through the September 2007 annual evaluation—according

to Plaintiff, she consistently scored above 90 out of 100 for more than twenty years.  In 2008, the

Hospital instituted a new human resources program which, according to Defendants, places more

emphasis on the quality of employees' interactions with patients, co-workers, and managers.  On

the two subsequent annual evaluations, Plaintiff's nurse manager at the time continued to rate her

highly, scoring Plaintiff at 92.5 in 2008 and 94 in 2009.

In February 2010, Defendant Zimmermann became the nurse manager of the Mother-

Baby Unit.  She was previously the Unit's assistant nurse manager.  On April 6 and May 13,

2010, Zimmermann counseled Plaintiff concerning Plaintiff's over-assertiveness with co-

workers and her inappropriate need to demonstrate her seniority in the Unit.  On June 30, 2010,

the Mother-Baby Unit nurses drafted and signed a "Commitment to Teamwork" statement in

---

[2] The Court notes its displeasure with Plaintiff's failure to follow the Court's individual rules of practice with respect to Plaintiff's Rule 56.1 statement of material facts, (Rule 3.G.iii.), and with respect to Plaintiff's improper submission of entire deposition transcripts, (Rule 3.G.iv.).

[3] The Court disregards Defendants' untimely served April 29, 2013, Request for Admissions to the extent Plaintiff does not admit its assertions in her Rule 56.1 statement, as requests for admissions were due April 1, 2013, and fact discovery was to end April 30, 2013.  Defendants' argument that Magistrate Judge Smith had been flexible with discovery deadlines is of no moment.  In the Case Management and Scheduling Order of December 5, 2012, Judge Karas stated, "The discovery deadline will not be moved.  If the Parties want more time for discovery, they can consent to have the magistrate judge handle the case for *all* purposes."  (Doc. 7) (emphasis added).  However, the case was referred to Judge Smith only for general pre-trial purposes.  (Doc. 8.)

which they collectively agreed to treat others with kindness and respect, maintain a positive attitude, show empathy toward peers, and share knowledge and experience with peers.  In July 2010 Zimmermann gave Plaintiff a verbal warning, apparently about Plaintiff being confrontational in public with co-workers.  On the following annual evaluation covering the period from September 2009 through September 2010, Zimmermann rated Plaintiff at 68.3 out of 100, stating, *inter alia*, that Plaintiff had a difficult time following the "Commitment to Teamwork" statement; that Zimmermann had to counsel Plaintiff multiple times throughout the year about being overly assertive with co-workers and disrespectful in her communications; that Plaintiff did not offer information, insight, or support to her peers except when it gratified her; and that Plaintiff was not a team player, as the Unit's patients belonged to the entire nursing staff and not just one nurse.  The evaluation requested that Plaintiff consider all the constructive feedback she had been given throughout the year.  Plaintiff received the evaluation in January or February of 2011.

On March 23, 2011, Zimmermann gave Plaintiff another verbal warning, this time for purportedly having arrived at work late on March 17, March 22, and March 23.  Zimmermann did not document who observed Plaintiff arriving late on March 23, and it is unclear from the record whether Plaintiff in fact arrived late on that date.  On April 11, 2011, Zimmermann suspended Plaintiff for two shifts, with the approval of the Hospital's Human Resources department, for having a loud, confrontational conversation on April 1 with a nurse from another unit in front of a patient and in a public area where other patients could hear.  Zimmermann testified that she observed at least part of the conversation.  The suspension notice cited Zimmermann's previous counseling of Plaintiff regarding her behavior toward co-workers.

On May 17, 2011, Zimmermann issued Plaintiff a written warning for arriving late on

May 5.  The warning does not document who observed Plaintiff arriving late, and Plaintiff testified she arrived twenty minutes early that day because it was her first day back from the suspension.  Plaintiff also asserts that she asked Human Resources to check security camera footage to see when she actually arrived, but they did not.  After being issued the written warning, Plaintiff cried in front of co-workers, and either Plaintiff or another nurse suggested that Zimmermann was bullying Plaintiff.  According to Plaintiff, during this conversation with fellow nurses, Plaintiff stated that she would take legal action against Zimmermann if she did not stop picking on Plaintiff.  Plaintiff testified that she did not tell her co-workers what sort of legal action she had in mind, and that she did not have a specific kind of legal action in mind except perhaps to have an attorney write a letter to Human Resources because Plaintiff's purported offenses were fabricated.  Plaintiff asserts in her affidavit that she had heard rumors that the Hospital was looking to force out older, long-tenured nurses with six-figure salaries and replace them with younger nurses, and that because of these rumors Plaintiff began to believe she was one of the people Defendants had targeted for termination.  Someone informed Zimmermann that Plaintiff planned to take action against Zimmermann, and Zimmermann claims in her affidavit that she felt physically threatened.

On May 23, 2011, Plaintiff's employment was terminated.  After listing the above purported infractions, counseling sessions, and disciplinary actions, Zimmermann wrote in the notice of termination that it was unprofessional and unacceptable for Plaintiff to publicly discuss the most recent written warning, a private matter of discipline, and to make threats against someone else.  The notice then informed Plaintiff that her employment was terminated immediately "[a]s a result of [Plaintiff's] continued inappropriate behavior despite being counseled multiple times."

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  The rule states in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue[4] of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact,"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d

---

[4] The 2010 amendment to the Rule retained the summary judgment standard of former subdivision (c), but replaced "issue" with "dispute" because the term "better reflects the focus of a summary judgment determination."  Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.  Thus, the terms are used interchangeably.

109, 113 (2d Cir. 2005)).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

"[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) ("[I]ntent is always a subjective matter of inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980))).  However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

## III. AGE DISCRIMINATION: DISPARATE TREATMENT

Defendants assert that Plaintiff has insufficient evidence to support her allegations that Defendants intentionally discriminated against Plaintiff by terminating her employment because of her age.  The ADEA protects employees who are at least 40 years old from adverse

employment actions.  29 U.S.C. § 631(a).  Under the ADEA, it is unlawful for an employer, *inter alia*, "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* § 623(a)(1).  Plaintiff asserts a claim of discrimination under the ADEA against the Hospital only.[5]

To establish a *prima facie* case for age discrimination, a plaintiff must demonstrate "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  The Second Circuit has characterized the burden of establishing a *prima facie* case in age discrimination cases as "minimal" and "de minimis." *Berube v. A&P*, 348 F. App'x 684, 686 (2d Cir. 2009) (citing *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).  Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant, who must offer "a legitimate, nondiscriminatory rationale for its actions." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000)).  If the defendant offers such a rationale, the plaintiff must prove that the defendant's rationale is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.  To raise a triable issue of fact concerning pretext at the summary judgment stage, "the plaintiff's

---

[5] Plaintiff accuses both Defendants of age discrimination under the New York State Human Rights Law.  N.Y. Exec. L. § 296(1)(a) (making it unlawful "[f]or an employer . . . because of an individual's age . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment").   As this language is nearly identical to federal law, the standards governing ADEA analysis also apply to the New York State Human Rights Law. *See Ortega v. N.Y.C. Off-Track Betting Corp.*, No. 97 Civ. 7582(KMW), 1999 WL 342353, at *3 n.2 (S.D.N.Y. May 27, 1999)).

admissible evidence must show circumstances that would be sufficient to permit a rational finder

of fact to infer that the defendant's employment decision was more likely than not based . . . on

discrimination." *Terry*, 336 F.3d at 138 (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d

305, 312 (2d Cir. 1997)).

The ADEA does not allow for mixed-motive discrimination claims.  *Gross v. FBL Fin.*

*Servs., Inc.*, 557 U.S. 167, 175 (2009).  Thus, "a plaintiff must prove that age was the 'but-for'

cause of the employer's adverse decision."  *Id.* at 176; *contra* 42 U.S.C. § 2000e-2(m) (Title VII

plaintiff establishes discrimination if she demonstrates "that race, color, religion, sex, or national

origin was a motivating factor for any employment practice, even though other factors also

motivated the practice").

According to Defendants, Plaintiff cannot satisfy the fourth element of the *prima facie*

case, demonstrating that the circumstances of her termination give rise to an inference of

discrimination.  For purposes of a summary judgment motion in a disparate treatment case, "an

ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a

defendant's knowledge as to the significant age discrepancy to support a *prima facie* inference of

discriminatory intent."  *Bucalo*, 691 F.3d at 130 (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d

69, 90 (2d Cir. 2005)).  Here, there is no doubt the Hospital knew that Plaintiff was in fact

replaced by a worker eleven years her junior and not belonging to the age-protected group.

Additionally, there is evidence to suggest the Hospital knew even before announcing the open

position that Plaintiff's replacement would be younger than Plaintiff.  Defendants assert and

Plaintiff testified at her deposition that older nurses who gain seniority in a hospital tend not to

leave, such that a pool of applicants for an open position tends to consist of younger nurses.  This

purported fact, if true, supports an inference that the Hospital knew Plaintiff's replacement

8

would be younger and undercuts Defendants' assertion that this supposedly unusual circumstance in the nurse hiring market should not be deemed sufficient to give rise to an inference of age discrimination. Therefore, Defendants are incorrect that Plaintiff cannot establish a *prima facie* case.

Having determined that Plaintiff has made a *prima facie* showing of discrimination under the ADEA against the Hospital, the burden now shifts to Defendants to proffer evidence to demonstrate Plaintiff's termination was based on a legitimate, non-discriminatory reason. Here, Defendants' evidence demonstrates that Plaintiff repeatedly comported herself in a disrespectful and confrontational manner toward peers and that she was repeatedly tardy, in violation of the Hospital's policies. This showing is supported by documentary evidence from Plaintiff's personnel file and the deposition testimony of Zimmermann and non-party John Sanchez, the Vice President of Human Resources.

The remaining issue, then, is whether Plaintiff has proffered admissible evidence sufficient to permit a reasonable jury to find that Defendants' reason for terminating Plaintiff was a pretext for age discrimination. Plaintiff admits she has no direct evidence of Defendants' discriminatory animus toward her, but rather relies upon circumstantial evidence. Plaintiff testified that Defendants discriminated against her based on her age because she was long-tenured and had a high salary and older employees tend to have worked longer and have higher salaries. However, "age and years of service are analytically distinct" such that an employer can consider one and not the other. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). Thus, "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age," as is typical with long tenure and higher salaries. *Id.*; *cf.* 29 U.S.C.

9

§ 623(f)(1) (not unlawful discrimination "where the differentiation [among employees] is based on reasonable factors other than age").  At her deposition, Plaintiff was unable to explain why she believed she was being discriminated against because of her age, other than to continually refer to her years of service and salary.  As mixed-motive discrimination claims are not actionable under the ADEA, *Gross*, 557 U.S. at 175, any alleged consideration of Plaintiff's tenure or salary is insufficient to raise a triable issue of fact concerning whether Defendants' asserted reasons for Plaintiff's termination were a pretext for age discrimination.

Plaintiff's proffer of affidavits to support the contention that Defendants fired her because of her age is equally insufficient to raise a triable issue of fact.  Plaintiff avers in her affidavit that she heard rumors that the Hospital was trying to force out older nurses with longer tenure and six-figure salaries, but these rumors are hearsay, Fed. R. Evid. 801(c), and not admissible evidence, Fed. R. Civ. P. 56(c)(1)(B); *Terry*, 336 F.3d at 138.  Plaintiff also asserts that she knows some older nurses who were forced out.  The affidavit of one fellow nurse, Sonia Marie Hunter, asserts in conclusory fashion that "upon information and belief" the Hospital targeted nurses who had worked over 20 years and were over 40 years old, without explaining the specific information upon which she bases her belief.  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  The affidavit of the other fellow nurse, Kathleen Neilsen Auffant ("Auffant"), claims to have been targeted for unreasonable disciplinary measures and that a younger nurse was given a more desirable shift.  Auffant also asserts that 15 other nurses of similar age with long tenure and high salaries were forced out for false or trivial reasons, but she does not provide specific names even though the Hospital created lists of nurses who were terminated or resigned, and she is otherwise unable to show through her own personal knowledge the reasons for the terminations of the other nurses.  Thus, there is only conjecture.

10

*Id.*; *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).  Plaintiff's proffer fails to raise a triable dispute of material fact concerning whether Defendants' reasons for her termination were pretextual for age discrimination.  Accordingly, Defendants' summary judgment motion seeking to dismiss Plaintiff's claim on a disparate treatment theory of liability, to the extent alleged, is granted.

## IV. AGE DISCRIMINATION: DISPARATE IMPACT

Defendants assert that Plaintiff has insufficient evidence to support her allegations of a disparate impact upon nurses in the age-protected class resulting from some facially neutral policy or practice.  The ADEA allows for recovery under a theory of disparate impact.  *Smith v. City of Jackson*, 544 U.S. 228, 233–40 (2005).  According to the statute, an employer may not "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623(a)(2).  This subsection "focuses on the *effects* of the action on the employee rather than the motivation for the action of the employer."  *Smith*, 544 U.S. at 236.  In the ADEA context, to establish a *prima facie* case of disparate impact, a plaintiff must (1) show a statistical disparity between age-protected individuals and younger individuals in employment opportunities or in their status as employees and (2) identify a specific neutral employment practice which, as applied, causes the disparity.  *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656–57 (1989), *cited in Smith*, 544 U.S. at 240 (holding that *Wards Cove* formulation still applicable to ADEA disparate impact cases).  If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer evidence of a legitimate business justification for its policy or practice.  *Wards Cove*, 490 U.S. at 659.  If the defendant proffers such evidence, the plaintiff must prove that less discriminatory practices

11

would achieve the same ends.  *Wards Cove*, 490 U.S. at 660.

Here, there is potentially a genuine dispute of material fact concerning the existence of a statistical disparity in terminations of older versus younger nurses, but there is no admissible evidence identifying any Hospital policy or practice causing the disparity.  Almost two thirds of the nurses—14 of 22—terminated for cause from 2010 through 2012 were at least 40 years old. Eleven of those fourteen were replaced, seven by someone younger but only four by someone under 40 years old.  Based on these figures, it appears Plaintiff can demonstrate the existence of a statistical disparity.  However, the list of nurses employed in Plaintiff's Unit as of her termination date shows that 29 of the 34 nurses listed were in the age-protected group and 23 were older than Plaintiff, but she was the only one terminated.  These statistics tend to show the absence of a statistical disparity.  Plaintiff also relies upon the list of nurses who voluntarily quit in 2011 to show a statistical disparity, though she identifies only two as having been forced to quit.  Slightly more than half the nurses who voluntarily quit, 32 of 63, were at least 40 years old; 24 of the 32 were replaced, 21 by someone younger and 18 by someone under 40 years old. Because Plaintiff fails to offer any explanation for the vast majority of these defections and certainly offers no evidence to explain them, this second list is insufficient to support her contention that a statistical disparity exists due to coerced resignations.

Concerning a specific employment practice, Plaintiff does nothing more than allege the existence of a Hospital-wide policy of terminating highly paid nurses.  Plaintiff relies on the aforementioned rumors and her personal knowledge that three other nurses told her they were forced out, but has no non-hearsay evidence supporting her contention. Fed. R. Civ. P. 56(c)(1)(B); *Terry*, 336 F.3d at 138.  Moreover, discovery has uncovered no such policy or practice, as the Hospital produced no documented plans to reduce nursing staff due to budgetary

12

constraints and there was no testimony concerning such a plan.  The best evidence Plaintiff has,

that the Hospital did not replace all the nurses who quit or were terminated, is insufficient for a

trier of fact to reasonably conclude that this failure to replace was due to a policy designed to

shed nurse salary.  Of the 22 nurses terminated, only three were on salary making six figures,

whereas an equal number of the 15 replacements were given six-figure salaries.  Thus, Plaintiff

is unable to establish a *prima facie* case of disparate impact caused by a specific practice.

Accordingly, summary judgment on the disparate impact theory of liability must be granted.

## V. RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

Defendants assert that Plaintiff has no evidence showing that under the ADEA

Defendants terminated her employment in retaliation for her statement that she would take legal

action if Zimmermann continued to bully her.  It is "unlawful for an employer to discriminate

against any of his employees . . . because such individual . . . has opposed any practice made

unlawful by [the ADEA]."  29 U.S.C. § 623(d).  To establish a *prima facie* case of retaliation,

Plaintiff must demonstrate "(1) participation in a protected activity, (2) that the defendant knew

of the protected activity, (3) an adverse employment action, and (4) a causal connection between

the protected activity and the adverse employment action.  *Bucalo v. Shelter Island Union Free*

*Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks and citations omitted).

Once a plaintiff establishes a *prima facie* case, the same burden shifting framework applicable to

disparate treatment claims applies to ADEA retaliation claims.  *Terry v. Ashcroft*, 336 F.3d 128,

141 (2d Cir. 2003).[6]

---

[6] This framework also applies to Plaintiff's state-law retaliation claim, *see Boyce v. N.Y.C. Mission Soc'y*, 963 F. Supp. 290, 295 n.3 (S.D.N.Y. 1997), which makes it unlawful "[f]or an employer . . . to discharge, expel or otherwise discriminate against any person because he *or she* has opposed any practices forbidden under this article or because he *or she* has filed a complaint, testified or assisted in any proceeding under this article," N.Y. Exec. L. § 296(1)(e).

13

Defendants assert that Plaintiff did not participate in any protected activity because Plaintiff's statement to co-workers that she would take legal action does not constitute opposition to any purported age discrimination.  Defendants reference Plaintiff's deposition, in which she testified that she did not tell her co-workers what sort of legal action she had in mind, that she in fact had no particular type of legal action in mind, that she had not contemplated filing a federal or state discrimination complaint, that she had not expressed to management that she had some legal claim against the hospital, and that at most she thought she probably would have an attorney write a letter to Human Resources addressing her allegedly fabricated violations of Hospital policy.  To be sure, "[t]he law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000)).  However, nothing in the record suggests Plaintiff complained *about age discrimination* to her co-workers or to management, either explicitly or implicitly.  *See McDowell v. T-Mobile USA, Inc.*, 307 F. App'x 531, 534 (2d Cir. 2009) (finding complaints that promotion paperwork was delayed and that another worker was not promoted to be insufficient evidence for showing engagement in protected activity), *aff'g* No. CV-04-2909, 2007 WL 2816194, at *18 (E.D.N.Y. Sept. 26, 2007).  The evidence at most shows Plaintiff complained of general unfair treatment by allegedly being bullied, which is insufficient to demonstrate a protected activity.  *See Dabney v. Christmas Tree Shops*, No. 10-CV-8734 (CS), 2013 WL 3820668, at *8 (S.D.N.Y. July 24, 2013) (citing *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally. . . . While

14

plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity.")). Thus, Plaintiff is unable to demonstrate a *prima facie* case of retaliation. Accordingly, summary judgment on the retaliation claim must be granted.

## VI. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate this motion (Doc. 26), enter judgment for Defendants, and close the case.

Dated: November 12, 2013
      White Plains, New York

SO ORDERED:

_____  11/12/13

NELSON S. ROMÁN
United States District Judge